DENTON 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-522-CV





LANE DENTON,



 APPELLANT


vs.





TEXAS DEPARTMENT OF PUBLIC SAFETY OFFICERS ASSOCIATION, ET AL.,



 APPELLEES





 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT



NO. 91-14706, HONORABLE JOE B. DIBRELL, JUDGE PRESIDING



 





 Appellant Lane Denton brought suit against Appellees (1) for various causes of
action relating to the termination of his employment as Executive Director of the Texas
Department of Public Safety Officers Association ("DPSOA"). The district court dismissed
his suit. We will reverse the judgment and remand for further proceedings.



THE CONTROVERSY

 Lane Denton sued Appellees for breach of contract and wrongful termination as
Executive Director of DPSOA. Denton further alleged intentional infliction of emotional distress,
violation of his right to privacy, and tortious interference with business contracts and
relationships. On March 25, 1992, Appellees served notice that they planned to take Denton's
deposition on April 23, 1992. Denton did not appear for his April 23rd deposition, and Appellees
moved that Denton be compelled to give his deposition. The court eventually ordered Denton to
appear for a deposition on June 11, 1992.

 In the meantime, on May 28, 1992, the Travis County Grand Jury indicted Denton
for misappropriation of fiduciary property of DPSOA. Because of the overlapping nature of the
civil and criminal proceedings, Denton, on June 2, 1992, filed a plea in abatement asking the trial
court to abate the civil action until the conclusion of the criminal proceedings. Denton also filed
a motion for a protective order, seeking a stay of all discovery until he was no longer at risk of
incriminating himself. The trial court eventually denied both motions. Thereafter, in his June
11th deposition, Denton invoked his Fifth Amendment privilege against self-incrimination in
response to questions he deemed subject to this privilege. Denton also produced some, but not
all, of the documents that Appellees had requested.

 On June 15, 1992, the trial court heard Appellees' motion to dismiss and ordered
Denton to either produce all documents requested and respond to all questions Appellees
propounded, or face dismissal of his suit. Denton, however, continued to assert his right against
self-incrimination at his June 16th deposition by refusing to answer some of Appellees' questions
and refusing to produce all of the documents requested. The trial court conducted further hearings
on Appellees' motion to dismiss and, upon reviewing Denton's deposition, dismissed the action
on June 30, 1992.

 Before the case was dismissed, Denton voluntarily nonsuited his breach-of-contract
claims that were governed by a four-year statute of limitations. Although the dismissal was
without prejudice to refile, the remaining tort claims were governed by a two-year statute of
limitations. Therefore, dismissal of Denton's lawsuit meant that Denton's tort causes of action
would be barred.

 In four points of error, Denton contends the trial court erred in dismissing the cause
because: (1) Denton's rights against self-incrimination outweigh any harm that Appellees would
suffer from an abatement of the civil proceeding; (2) the dismissal was an excessive sanction; (3)
Denton was denied due process; and (4) the district court failed to make an in camera
determination of the relevance of the information sought.



PRIVILEGE AGAINST SELF-INCRIMINATION


 The Fifth Amendment to the United States Constitution provides that "[n]o person
. . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend
V. The privilege against self-incrimination is made applicable to the states by the Fourteenth
Amendment. U.S. Const. amend. XIV. Similarly, the Texas Constitution provides that "[i]n all
criminal prosecutions the accused . . . shall not be compelled to give evidence against himself." 
Tex. Const. art. I, § 10.

 The self-incrimination privilege extends not only to the accused in a criminal
proceeding, but also to witnesses in both criminal and civil cases. Ex parte Butler, 522 S.W.2d
196, 197-98 (Tex. 1975); Dendy v. Wilson, 179 S.W.2d 269, 275 (Tex. 1944). We recognize the
constitutional dimension of the privilege against self-incrimination and will broadly construe the
privilege so as to protect it. See Maness v. Meyers, 419 U.S. 449, 461 (1975).



The Offensive-Use Waiver

 The self-incrimination privilege is not absolute. In Texas, a party or witness may
waive a privilege by "offensive use" of the privilege. In some instances, a plaintiff may seek
affirmative relief in court while, at the same time, protecting information that may directly bear
upon the cause of action. To do so constitutes the use of a privilege as both a "sword" and a
"shield," and Texas courts have held that such use constitutes "offensive use" of the privilege. 
See, e.g., Republic Ins. Co. v. Davis, 856 S.W.2d 158 (Tex. 1993); Ginsberg v. Fifth Court of
Appeals, 686 S.W.2d 105, 107 (Tex. 1985).

 Until recently, the leading Texas case discussing the offensive-use waiver was
Ginsberg v. Fifth Court of Appeals, 686 S.W.2d 105 (Tex. 1985). Appellees argue that the
decision in Ginsberg supports the trial court's dismissal of Denton's civil action. They claim that,
while Denton has the right to assert his self-incrimination privilege, he cannot continue his civil
cause of action while shielding relevant information. Denton responds that Ginsberg is not
controlling in this instance. In his first point of error, he argues that his rights against self-incrimination outweigh any harm Appellees would have suffered had the abatement been granted. 
In his third point of error, Denton argues that the trial court denied him due process by failing to
balance his self-incrimination rights against any possible harm to Appellees.

 The facts of Ginsberg are as follows. Ginsberg claimed to own a building on the
basis of two deeds. Ginsberg, 686 S.W.2d at 106. One deed was executed by plaintiff Gaynier's
husband, conveying his interest in the building to Ginsberg. After her husband died, Gaynier
executed a deed ratifying her husband's deed. Ten years later, Gaynier brought a trespass-to-try-title suit against Ginsberg, claiming that the first deed was a forgery and that Ginsberg
fraudulently induced her into signing the second deed. Id. Gaynier testified at a deposition that
she was unaware, until ten years after the fact, that title to the building had passed to Ginsberg,
and that she did not remember signing the second deed. She also testified that she had seen a
psychiatrist at the time of the conveyance. Id. Ginsberg's defense was that Gaynier knew at the
time of the conveyance that title to the building was to pass to Ginsberg, that the statute of
limitations precluded Gaynier from bringing suit, and that Gaynier's medical records contained
information relevant to Ginsberg's statute of limitations defense. Id. The medical records
disclosed that Gaynier had told her psychiatrist that the building was sold while the Gayniers were
on Padre Island, thus confirming in large measure Ginsberg's defense. Id.

 When Ginsberg sought to depose the psychiatrist, Gaynier objected on the basis that
the deposition would violate her psychotherapist-patient privilege. (2) The trial court denied
Gaynier's motion for a protective order, and Gaynier petitioned the Fifth Court of Appeals to deny
Ginsberg the right to depose the psychiatrist based on Gaynier's claim of privilege. Id. The court
of appeals issued the writ of mandamus Gaynier had sought. See Gaynier v. Johnson, 673
S.W.2d 899 (Tex. App.--Dallas 1984, orig. proceeding). Ginsberg then filed a motion for leave
to file petition for writ of mandamus in the Texas Supreme Court relating to the appellate court's
decision. Ginsberg, 686 S.W.2d at 107. While that proceeding was pending and after the death
of the psychiatrist, Ginsberg sought to depose the psychiatrist's medical-records custodian. The
trial court denied his request. Id. Ginsberg filed a second petition for writ of mandamus in the
court of appeals relating to the trial court's actions. The court of appeals denied Ginsberg the
relief he was seeking. See Ginsberg v. Johnson, 673 S.W.2d 942 (Tex. App.--Dallas 1984, orig.
proceeding). Ginsberg then filed a second motion for leave to petition for writ of mandamus in
the supreme court. The supreme court considered both petitions jointly. Ginsberg, 686 S.W.2d
at 107.

 The supreme court conditionally granted Ginsberg's writ of mandamus, providing
him access to the medical records. Citing Henson, as well as similar cases from other
jurisdictions, the court reasoned that a plaintiff may not use a privilege as an offensive weapon,
seeking affirmative relief in the trial court while silencing otherwise pertinent information. 
Ginsberg, 686 S.W.2d at 108. This reasoning is based on the premise that the plaintiff has
voluntarily chosen the courts as a means of redress. The supreme court held that the plaintiff may
invoke the privilege, but the trial court may then dismiss the cause. Id.; see also Marjorie S.
White, Plaintiff as Deponent: Invoking the Fifth Amendment, 48 U. Chi. L. Rev. 158, 162
(1981); Annotation, Dismissing Action or Striking Testimony Where Party to Civil Action Asserts
Privilege Against Self-Incrimination as to Pertinent Question, 4 A.L.R.3d 545 (1965). The
supreme court held that Gaynier could either waive her privilege and continue her cause of action
or maintain her privilege and abandon her suit. Ginsberg, 686 S.W.2d at 107.

 While the present appeal was pending in this Court, the Texas Supreme Court
handed down its decision in Republic Ins. Co. v. Davis, 856 S.W.2d 158 (Tex. 1993), which
refined the Ginsberg decision. The privilege at issue in Republic Insurance was the attorney-client
privilege. (3) The court stated that privileges "represent society's desire to protect certain
relationships, and an offensive use waiver of a privilege should not lightly be found." Id. at 163. 
The court established the following three-part test to determine when a privilege has been waived:



First, before a waiver may be found the party asserting the privilege must seek
affirmative relief. Second, the privileged information sought must be such that,
if believed by the fact finder, in all probability it would be outcome determinative
of the cause of action asserted. Mere relevance is insufficient. A contradiction in
position without more is insufficient. The confidential communication must go to
the very heart of the affirmative relief sought. Third, disclosure of the confidential
communication must be the only means by which the aggrieved party may obtain
the evidence.



Id. at 163 (footnotes omitted). If any one of the elements is not met, the trial court must uphold
the privilege. Id.

 The supreme court determined that the plaintiff in Republic Insurance was not
seeking affirmative relief because its declaratory judgment action was "remedial" only. Id. at
164. The court held that the purpose of a declaratory action is to declare existing rights and that
such an action is not necessarily a claim for affirmative relief. Id. The supreme court, while not
applying the remaining two prongs of the test, held that the trial court had abused its discretion
in ordering the plaintiff to produce documents protected by the attorney-client privilege. Id.



Application of the Republic Insurance Test

 Our analysis of the present case begins with the first prong of the Republic
Insurance test: whether the party claiming the privilege is seeking affirmative relief. We note
that, although Denton was the plaintiff in this civil action, he took several steps to diminish the
impact of the application of the self-incrimination privilege. As an initial matter, Denton
voluntarily non suited his causes of action that were not time-barred. Furthermore, he requested
abatement of the civil action and sought a protective order to stay all discovery until the criminal
proceedings were concluded and he was no longer at risk of incriminating himself.

 The first part of the Republic Insurance test asks whether the party is attempting
to use the privilege as both a sword and a shield. In Republic Insurance, the court concluded that
because the plaintiff sought a declaration of rights and not the adjudication of a claim, the plaintiff
was not seeking affirmative relief. Id. at 164. In the present action, Denton attempted to abate
both the lawsuit and the discovery process. He specifically did not attempt to adjudicate his claim
without providing Appellees the privileged information. Accordingly, we conclude that Denton
did not use the self-incrimination privilege as a sword to thwart the discovery process or the civil
proceeding as a whole. After the conclusion of the related criminal action, the civil action, if
abated, could have proceeded unfettered by claims of privilege. Denton claimed the privilege
merely to shield himself from self-incrimination, the very purpose for which the federal and state
constitutions provide protection. We conclude that the first prong of the Republic Insurance test
is not satisfied and, therefore, that Denton did not attempt "offensive use" of the self-incrimination
privilege. Although our analysis could end here, for the sake of completeness we will discuss the
application of the second and third prongs of the Republic Insurance test to the present action.

 The second prong of the Republic Insurance test requires that the information
sought be outcome determinative. "Mere relevance is insufficient . . . . The confidential
communication sought must go to the very heart of the affirmative relief sought." Id. at 163
(emphasis added). Some questions to which Denton invoked his privilege could be considered to
be outcome determinative:



Q. With regard to paragraph 27 of your sixth amended original petition, describe
for me the lost business opportunities as a lobbyist that you have suffered as
a result of the action of the defendants.


 . . . . 


Q. While you were employed by [DPSOA], did you ever omit items from your
financial presentation to the Board of Directors . . . that specifically referred
to compensation paid to South Coast Associates?


 . . . .


Q. On or about December 31st, 1988, did you take money from [DPSOA]?


 . . . .


Q. At any time while you were employed by [DPSOA] did you falsify an expense
reimbursement statement?



Other questions to which he invoked his privilege, however, are merely relevant and not outcome
determinative as to his cause of action:



Q. During your employment with [DPSOA] what business ventures were you
involved in with John Chrestia?


 . . . .


Q. Did you ever disclose to any members of the Board of the DPSOA any type
of financial relationship you may have had with South Coast during your
tenure as the executive director of DPSOA?


 . . . .


Q. Who are your partners or associates or stockholders, fellow stockholders, in
South Coast Associates?


 . . . .


Q. What companies do you have an interest in at the present time?



The trial judge ordered Denton to answer all questions propounded to him by Appellees or risk
dismissal. The order was not limited only to issues that go to "the very heart of the affirmative
relief sought," and the trial judge did not reconsider abatement after he originally overruled
Denton's motion. Because some of the questions propounded to Denton are not outcome
determinative to his cause of action, we conclude that the second prong of the Republic Insurance
test has not been met. 

 Under the third part of the Republic Insurance test, we must determine whether the
only means by which Appellees could obtain the information they sought was by deposing Denton. 
Answers to some of the questions to which Denton claimed his privilege could have been obtained
from other sources, for example:



Q. Did you ever instruct any employee of [DPSOA] to transfer any funds held in
the Officers Benefit Trust to either John Chrestia or South Coast Associates?


 . . . .


Q. Were you fired by [DPSOA] because you transferred funds of the association
to various other entities including yourself?


 . . . .


Q. At any time while you were employed by [DPSOA], did you instruct any
employee of that organization to divide contributions that came to the
association with South Coast Associates?



(Emphasis added). Although we recognize that Denton may have been the only source for some
of the requested information, in the aforementioned instances Denton was not the only source
capable of providing Appellees with most of the information they sought. Appellees could have
obtained the information from other DPSOA employees, from employees of South Coast
Associates, or from John Chrestia. Once again, the order of the trial court was not narrowly
tailored to protect Denton's self-incrimination privilege. Accordingly, we conclude that the third
prong of the test has not been satisfied. Because all three of the requirements of the Republic
Insurance test are lacking, we hold that Denton did not waive his privilege against self-incrimination and that the trial court erred in dismissing the action.



Constitutional Balance

 In addition to the Republic Insurance analysis, we find the reasoning in Wehling
v. Columbia Broadcasting System, 608 F.2d 1084 (5th Cir. 1979) persuasive. (4) In Wehling, the
plaintiff filed a libel action against Columbia Broadcasting System ("CBS") after the network
broadcast negative allegations regarding the plaintiff's business practices. At the same time, these
business practices were the subject of a criminal proceeding. Id. at 1086. During discovery, the
plaintiff invoked his right against self-incrimination as to several of CBS's requests. The federal
district court, after denying the plaintiff's motion for a protective order and after compelling him
to comply with all of CBS's requests, dismissed his action with prejudice. Id. at 1085.

 On appeal, the United States Court of Appeals for the Fifth Circuit reversed,
holding that the plaintiff's due process rights had been violated. To determine whether a privilege
was validly asserted, the court utilized an approach in which the interests of all the parties are
balanced. Under this approach, a court should consider both the right of a defendant to obtain
relevant information and the plaintiff's Fifth Amendment and due process rights. The court in
Wehling determined that the plaintiff had the right to invoke his privilege because he reasonably
believed that his answers would incriminate him in the criminal proceedings. Furthermore, the
court reasoned that the plaintiff had both a Fifth Amendment right not to be compelled to
incriminate himself and a due-process right to the adjudication of his civil action. While a
plaintiff does not have an absolute right to bring suit, a defendant does not have an absolute right
to dismissal if the plaintiff invokes the constitutional privilege. "When the plaintiff's silence is
constitutionally guaranteed, dismissal is appropriate only when other, less burdensome remedies
would be an ineffective means of preventing unfairness to the defendant." Id. at 1088. The
plaintiff merely asked the trial court to abate the civil trial until the conclusion of the criminal
litigation, not to proceed with the civil trial without the privileged information. In balancing the
rights of the plaintiff and CBS, the court held that dismissal with prejudice was constitutionally
impermissible. Id. at 1087. The trial court abused its discretion because an abatement would not
have imposed undue hardship on CBS and would have protected the plaintiff from "unnecessary
adverse consequences." Id. at 1089.

 The United States Supreme Court has held that while the trial court determines the
relevance of a party's Fifth Amendment claim, the opinion of the trial judge must be governed by
personal perception as well as by the evidence before the court. See Hoffman v. United States,
341 U.S. 479, 487 (1951). To sustain the privilege, it must only be evident from the implications
of the questions that a responsive answer might result in injurious disclosure. Id. at 486. 
Evidence which an individual reasonably believes could be used against him in a criminal
prosecution is entitled to protection. Maness v. Meyers, 419 U.S. 449, 461 (1975).

 As the above cases illustrate, Denton had reason to fear that responses to certain
questions might affect his criminal proceedings. Denton's responses to Appellees' questions about
fraudulent use of DPSOA's funds and alleged kickbacks put him at risk of incriminating himself. 
The questions he refused to answer concerned evidence implicating Denton given by Appellees
to the Travis County District Attorney. Denton attempted to show the court the extent of
exposure he faced by presenting evidence during the hearings on the motion to dismiss and the
plea in abatement. By the standards set out by the United States Supreme Court in Hoffman and
Maness, Denton reasonably believed that responses to some of Appellees' requests would conflict
with his constitutional privilege.

 The question in this instance, however, is not whether Denton had the right to
invoke the privilege, but what effect the use of the privilege had on Denton's civil suit. 
Abatement would have allowed Denton eventually to pursue his tort causes of action, avoiding
the problem presented by the statute of limitations. However, Denton would not have been
allowed to use his privilege as a "sword" against Appellees. The only burden to Appellees would
have been the time involved in the stay of the civil proceedings. Otherwise, Appellees would have
had full access to the information they sought. Accordingly, we conclude that the trial court
should have balanced the various interests of the parties in light of Denton's request for a plea in
abatement.

 Under the authority of Republic Insurance and the reasoning in Wehling, the trial
court abused its discretion by dismissal of this cause. Accordingly, we sustain Denton's first and
third points of error.



SANCTIONS

 Appellees argue, alternatively, that the trial court's judgment can be upheld on the
basis that Denton failed to comply with discovery requests. Therefore, they maintain that the trial
court's dismissal of Denton's lawsuit was a permissible discovery sanction. Denton insists in his
second point of error that the dismissal sanction was excessive.

 The disposition of this point is controlled by Texas Rule of Civil Procedure 215
and the Texas Supreme Court's decision in TransAmerican Natural Gas Corp. v. Powell, 811
S.W.2d 913 (Tex. 1991). In TransAmerican, the supreme court recognized that sanctions must
be just, and it outlined two standards to make this determination. First, there must be a direct
relationship between the sanction and the offensive conduct. In other words, the sanction must
be directed toward remedying the prejudice incurred by the other party. Id. at 917. Second,
sanctions must not be excessive. A sanction for a party's conduct should be no more severe than
necessary to satisfy its legitimate purpose. Id. A dismissal with prejudice is justifiable upon a
finding of bad faith, where a party wantonly disregards the rules of discovery or an order of the
court. Ray v. Beene, 721 S.W.2d 876, 879 (Tex. App.--Houston [1st Dist.] 1986, writ ref'd
n.r.e.) (citing Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238 (Tex. 1985), cert. denied,
476 U.S. 1159 (1986)); Southern Pac. Transp. Co. v. Evans, 590 S.W.2d 515 (Tex. Civ.
App.--Houston [1st Dist.] 1979, writ ref'd n.r.e), cert. denied, 449 U.S. 994 (1980).

 The TransAmerican standards set the bounds under Rule 215 within which the trial
court may use its discretion to impose sanctions. In TransAmerican, the court held that the
discretion of the trial court to impose such sanctions has constitutional limitations. 
TransAmerican, 811 S.W.2d at 917. When a trial court dismisses a case based on a claimant's
conduct during discovery, it adjudicates the claimant's cause of action without regard to the merits
of the case. Discovery sanctions cannot be used to adjudicate a party's claims unless that party's
conduct justifies a presumption that his claim lacks merit. Id. at 918. The court further explained
that "[s]anctions which are so severe as to preclude presentation of the merits of the case should
not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the
responsibilities of discovery under the rules." Id. (emphasis added). Furthermore, in Spevack v.
Klein, 385 U.S. 511, 515 (1967), the United States Supreme Court determined that a penalty may
be anything that makes the assertion of a constitutional right costly. If used properly, the
privilege against self-incrimination is not a proper basis for a death-penalty sanction.

 The Texas Supreme Court has had occasion to revisit TransAmerican, and
continues to insist that death-penalty sanctions are inappropriate absent a finding of bad faith. See
Otis Elevator Co. v. Parmalee, 850 S.W.2d 179, 181 (Tex. 1993) (holding death-penalty
sanctions inappropriate where party inadvertently failed to comply with court's order and "nothing
in the record . . . even approaches the flagrant bad faith or abuse necessary for the imposition of
such sanctions"); Remington Arms Co., Inc. v. Caldwell, 850 S.W.2d 167, 171 (Tex. 1993)
(death-penalty sanctions held inappropriate where nothing in the evidence suggested Remington's
argument lacked merit, a finding necessary to a justify death-penalty sanction); Koepp v. Utica
Mut. Ins. Co., 833 S.W.2d 514 (Tex. 1992) (holding death-penalty sanctions inappropriate where
plaintiff refused to name co-workers who used drugs, and was late in answering interrogatories
because of attorney's illness, because there was no indication of bad faith).

 Denton failed to appear for his deposition and to comply fully with the order of the
court. However, the trial court ordered Denton to answer all questions propounded to him and
to provide all documents requested of him, despite the fact that Denton had a valid claim of the
privilege against self-incrimination. Not all of the information sought by Appellees appears to be
protected by Denton's privilege, but some of it unquestionably was. (5) The order of the trial court
did not distinguish between proper and improper uses of the privilege--it was a blanket order which
required Denton to respond to all questions or risk dismissal. Given the nature of the order and
of the information sought, a finding of bad faith, as required by TransAmerican, is not present
here. (6) Dismissal in this case, without a showing of actual bad faith by Denton and without serious
harm suffered by Appellees, would be excessive. See Hogan v. Beckel, 783 S.W.2d 307, 309-10
(Tex. App.--San Antonio 1989, writ denied). We conclude that, in the main, Denton's conduct
during discovery was based on his legitimate assertion of his privilege against self-incrimination. 
Accordingly, Denton's second point of error is sustained.

 Because we conclude that the imposition of death-penalty sanctions is not
appropriate, we need not reach Denton's fourth point of error regarding the failure of the trial
court to conduct an in camera inspection.



CONCLUSION

 We reverse the judgment of the trial court and remand the cause for proceedings
not inconsistent with this opinion.



 

 Mack Kidd, Justice 

Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Reversed and Remanded

Filed: September 15, 1993

Publish

1.   Appellees are the Texas Department of Public Safety Officers Association
("DPSOA"); Billy Don Ivey, Jerry Moore, and Charlie Adams (members of the Board of
Directors of DPSOA); Mary Pat Becnel, now Mary Pat Holt (a former employee of
DPSOA); and Jeff Heard, individually and d/b/a Jeff Heard & Company, and Jeff Heard
& Company, P.C. (DPSOA's accountant and his firm). 
2.   Although Ginsberg involved the psychotherapist-patient privilege, the decision is
premised on self-incrimination cases. See, e.g., Henson v. Citizens Bank, 549 S.W.2d 446
(Tex. Civ. App.--Eastland 1977, no writ) (holding that a plaintiff in a civil action could be
forced to either elect to invoke the privilege against self-incrimination or abandon the claim). 
3.   The supreme court in Republic Insurance holds that the Ginsberg decision extends to
the attorney-client privilege as well as to the psychotherapist-patient privilege.
4.   Decisions of the federal courts of appeals and district courts do not bind Texas
courts although they are received with respectful consideration. Barstow v. State, 742
S.W.2d 495, 501 n.2 (Tex. App.--Austin 1987, writ denied); see also Wichita Royalty Co. v.
City Nat'l Bank, 306 U.S. 103, 109 (1939). 
5.   See excerpts from Denton's deposition, supra page 8.
6.   The court in Ray v. Beene, 721 S.W.2d 876, 878 (Tex. App.--Houston [1st Dist.] 1986,
writ ref'd n.r.e.), determined that a plaintiff's refusal to answer certain questions based on her
attorney-client and self-incrimination privileges was not bad faith.