Opinion issued June 21, 2018



In The

# Court of Appeals

For The

## First District of Texas

———————————

### NO. 01-17-00823-CV

———————————

**DAVID CHAMELI, Appellant**

**V.**

**FLORIDA GAS TRANSMISSION COMPANY LLC, Appellee**

---

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Case No. 2014-68677**

---

## MEMORANDUM OPINION

In this interlocutory appeal, appellant, David Chameli, appeals the trial court's order that denied his special appearance. In four issues on appeal, Chameli argues that (1) purposeful availment was lacking; (2) his contacts were not substantially related to the litigation; (3) the claims asserted were insufficient for jurisdiction; and

(4) appellee, Florida Gas Transmission Company ("FGT"), judicially admitted that Chameli has no personal liability and that he has attorney immunity against FGT's claims.

We reverse and render.

## Background

FGT operates a natural gas pipeline system that runs from Texas to Florida, while FCC Environmental, LLC ("FCC") provides maintenance, repair, and other services to pipeline owners. Around 2003, FGT and FCC entered into an "Environmental Services Agreement," ("ESA") for FCC to maintain FGT's pipeline system. In 2012, FGT needed maintenance on a section of its pipeline in Lavaca, Texas. FGT contacted FCC and requested environmental services, and FCC performed the work by using a frac tank.[1] The frac tank was later transported to a frac yard where an explosion occurred, injuring Oscar Villegas. Villegas sued FGT and FCC for his injuries.

After receiving notice of the Villegas suit, FGT notified FCC and demanded a defense and indemnity, pursuant to the ESA. FGT maintained that the ESA required FCC to defend and indemnify FGT for claims arising out of or incident to

---

[1]     A frac tank is a receptacle used to collect potential residual liquids that remain after evacuating the pipeline.

the negligent performance of the ESA or any work performed by FCC under the ESA.

On November 21, 2014, FGT sued FCC, seeking a declaration that FCC was required to defend and indemnify FGT from any liability for work performed by Villegas. FGT alleged that FCC refused to defend or indemnify FGT, and it refused to produce relevant insurance information so that FGT could assert its rights as an additional insured under any available insurance policies. As relevant to this case, on January 8, 2015, Chameli, Vice President and General Counsel for FCC, phoned FGT's counsel, who worked in Dallas, Texas, to seek an extension of FCC's deadline to appear in the lawsuit between FGT and FCC. During these communications, FGT maintained that Chameli represented that he would demand a defense of FGT from all of FCC's insurance carriers in connection with the underlying litigation with Villegas.

E-mail communications between Chameli and FGT's counsel between January 8 and January 30 indicate that FGT proposed that it would agree to Chameli's extension request if Chameli would agree to demand a defense of FGT, provide an indemnification response, and agree to arrange a meeting or mediation before March 15. After a number of e-mails, Chameli agreed. FGT refers to this agreement as the "Notice Agreement." Chameli identified at least one insurance carrier, but according to FGT, Chameli failed to identify the relevant insurance

carrier, Chartis Specialty Insurance Company, that could have provided a defense to FGT. On February 6, 2015, Chameli informed FGT that it did not have a duty to indemnify FGT for the Villegas litigation. As a result of FCC's position on its indemnity obligation to FGT, FGT eventually settled Villegas's claims against it.[2]

On July 21, 2017, FGT filed its third-amended petition,[3] adding Chameli as a defendant. FGT asserted that Chameli contacted FGT "in his capacity as legal counsel for . . . FCC" and in exchange for FGT's agreement to extend the deadline for FCC's answer in the present lawsuit, Chameli agreed to immediately demand a defense of FGT from FCC's insurance carriers in connection with the underlying litigation brought by Villegas. FGT further asserted that FCC did not disclose the certificate of insurance for the Chartis policy until nearly 18 months after the Villegas suit and after it sued FCC, and only after FGT settled the underlying Villegas suit. FGT brought causes of action against Chameli for fraud, negligent misrepresentation, breach of fiduciary duty, and tortious interference with contract.

Chameli filed a special appearance, disputing that he had minimum contacts with Texas. FGT responded, asserting that Chameli had minimum contacts with Texas as a result of his phone calls and e-mails to Texas and committing a tort in

---

[2]      The record does not reveal when FGT settled with Villegas.

[3]      The third amended petition is the only petition included within the appellate record.

4

Texas.  After the trial court denied Chameli's special appearance, Chameli brought this interlocutory appeal.[4]

## Special Appearance

In four issues on appeal, Chameli argues that the trial court erred in denying his special appearance.

### A.     Standard of Review

"Whether a court has personal jurisdiction over a defendant is a question of law." *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).  If the determination of jurisdiction depends on the resolution of questions of fact, the resolution of those facts are reviewed for legal and factual sufficiency.  *Id.* Otherwise, we "review the trial court's legal conclusions drawn from the facts to determine their correctness."  *Id.*

When, as here, the trial court does not issue findings of fact and conclusions of law for the special appearance, "all facts necessary to support the judgment and supported by the evidence are implied."  *Id.* at 795.  In the presence of a developed record, however, these conclusions are reviewed for legal and factual sufficiency. *Id.*

---

[4]      *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (West Supp. 2017).

**B.     Applicable Law**

"A nonresident defendant is subject to the personal jurisdiction of Texas courts if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction does not violate federal and state constitutional due process guarantees." *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010). Texas's long-arm statute extends a trial court's jurisdiction to the scope permitted by the federal constitution's due-process requirements. *Id.* Consistent with federal due-process protections, a state can exercise personal jurisdiction over nonresident defendants if they have "established minimum contacts with the forum state, and the exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)).

A party establishes minimum contacts with the forum state if it purposefully avails itself of the privileges and benefits of conducting business in a state. *Touradji v. Beach Capital P'ship, L.P.*, 316 S.W.3d 15, 24 (Tex. App.—Houston [1st Dist.] 2010, no pet.). The scope of the nonresident's actions that can constitute purposeful availment varies depending on the type of jurisdiction alleged: general jurisdiction or specific jurisdiction. *See id.* at 24–25.

6

A court has specific, personal jurisdiction over a nonresident defendant if (1) the nonresident purposefully directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there and (2) the controversy arises out of or is related to the nonresident's contacts with the forum state. *Id.* at 24. Such a determination ultimately concerns the relationship among the nonresident, the forum, and the litigation. *Kelly*, 301 S.W.3d at 658. For specific jurisdiction, "purposeful availment has no jurisdictional relevance unless the defendant's liability arises from or relates to the forum contacts." *Moki Mac*, 221 S.W.3d at 579.

Certain considerations are relevant in this determination. First, only the nonresident's actions are relevant to the determination of purposeful availment; unilateral actions of the plaintiff or of a third party are not relevant. *Touradji*, 316 S.W.3d at 24. Also, the actions of the nonresident must be purposeful; random, isolated, or fortuitous actions are insufficient. *Id.* Likewise, the nonresident's actions must seek some benefit, advantage, or profit through the purposeful availment so that the nonresident can be deemed to consent to suit there. *Id.*

The exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *Curocom Energy LLC v. Young-Sub Shim*, 416 S.W.3d 893, 896 (Tex. App.—Houston [1st Dist.] 2013, no pet.). If the nonresident defendant has purposefully established minimum contacts with the forum state, then

only in rare cases will a Texas court's exercise of personal jurisdiction not comport with fair play and substantial justice. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991).

We exclude from our consideration whether the nonresident did, in fact, commit a tort in Texas. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 791 (Tex. 2005). Otherwise, our jurisdictional rule would be "guilty nonresidents can be sued here, innocent ones cannot." *Id.* Instead, it is the alleged actions (as it pertains the allegations in the pleadings) and the proven actions (as it pertains to the evidence presented) of the nonresident that matter, regardless of whether those actions are tortious. *See id.*

Personal jurisdiction is claim specific. *Kelly*, 301 S.W.3d at 660; *Touradji*, 316 S.W.3d at 25–26. Accordingly, the facts that give rise to the claim must also subject the defendant to personal jurisdiction in Texas. *See Kelly*, 301 S.W.3d at 659 (holding that personal jurisdiction under specific jurisdiction can be defeated by showing claims do not arise from contacts).

The plaintiff bears the initial burden of pleading allegations that suffice to permit a court's exercise of personal jurisdiction over the nonresident defendant. *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016). Once the plaintiff has met this burden, the defendant then assumes the burden of negating all potential bases for personal jurisdiction that exist in the plaintiff's pleadings. *Id.* The

8

defendant can negate jurisdiction on either a factual or legal basis. *Kelly*, 301 S.W.3d at 659. A defendant negates jurisdiction on a factual basis by presenting evidence to disprove the plaintiff's jurisdictional allegations. *Id.* "The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction." *Id.* (footnotes omitted). A defendant negates jurisdiction on a legal basis by showing that "even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction." *Id.*

## C. Sufficient Jurisdictional Facts Alleged

In its live petition, the third amended petition, FGT alleged that Chameli made misrepresentations and entered into binding agreements in Texas, initiated multiple communications with FGT's counsel via phone calls and e-mails directed to Texas, and committed a tort in this State by making an agreement in Texas, which he subsequently breached.

We conclude that FGT satisfied its burden of alleging jurisdictional facts as to its claims against Chameli that occurred in Texas. *See Kelly*, 301 S.W.3d at 659–60 & n.6 (holding plaintiff was required to allege defendants committed fraudulent

acts in Texas to satisfy his initial burden of pleading jurisdictional facts); *see also*

*Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC*, 324 S.W.3d 840, 847 (Tex.

App.—Houston [14th Dist.] 2010, no pet.) (holding plaintiff's allegation that

defendants committed torts in Texas was sufficient to bring defendants under the

long-arm statute). Thus, the burden shifted to Chameli to negate all asserted

jurisdictional bases. *Searcy*, 496 S.W.3d at 66.

### D. Negating All Jurisdictional Bases

In his special appearance, Chameli argued that he did not have minimum

contacts with Texas, he did not put any products into the stream of commerce, and

that he has conducted no personal business in Texas. Chameli attached an affidavit

in which he avers that he:

(1) is a licensed attorney, residing and practicing in the State of Illinois;

(2) has never resided in Texas;

(3) does not personally do business or conduct any operations in the State of Texas;

(4) does not sell goods or services in the State of Texas or personally direct advertising towards Texas residents;

(5) has never recruited anyone or employed anyone in the State of Texas;

(6) has no bank accounts in Texas;

(7) does not personally put products into the stream of commerce knowing that some of them may reach Texas;

10

(8)  does not personally direct sales to Texas and does not make sales to Texas;

(9)  does not personally solicit business in Texas;

(10)  has never entered into any contract or agreement in Texas or to be performed in Texas, other than the engagement of counsel in this matter;

(11)  has never committed any tortious act or acts within the State of Texas, in whole or in part;

(12)  has never been sued in Texas, other than this lawsuit or purposefully availed himself to the protections of the laws of the State of Texas; and

(13)  denied that any of the acts alleged against him in this lawsuit took place in the State of Texas.

In a supplemental affidavit, Chameli averred that,

(1)  his job duties required him to contact FGT on FCC's behalf;

(2)  he never contacted FGT in anything other than his official capacity as general counsel as part of his job duties;

(3)  he called the only number he had for FGT's counsel, a telephone number that happened to originate in Texas;

(4)  he e-mailed the only e-mail address he had for FGT's counsel, and he had no control over where it was opened;

(5)  he mailed a letter to the only address he had for FGT's counsel, but he had no control over where FGT had chosen to retain counsel;

(6)  he did not personally receive any profit, advantage or benefit as a result of the emails between himself and FGT's counsel;

11

(7)     he did not personally receive any profit, advantage or benefit as a result of any communication between himself and FGT or its representatives;

(8)     he has never sought any profit, advantage or benefit from any connection with the State of Texas;

(9)     he has never committed a tort, in whole or in part, in the state of Texas, nor ever directed the commission of a tort, in whole or in part, in or at the state of Texas;

(10)    he never promised to make a demand for indemnity to FCC's insurers on behalf of FGT.

In its special appearance response, FGT argued that Chameli agreed in e-mail correspondence that in exchange for FGT giving an extension of time to file an answer, Chameli would request that its insurance carriers provide a defense of FGT in the underlying Villegas litigation. Richard Krumholz, counsel for FGT, attached an affidavit, testifying that,

(1)     On January 8, 2015, Chameli called him at his office in Dallas, Texas to discuss FGT's lawsuit, prospects for and his hope to coordinate an overall settlement, and to seek an extension of FCC's deadline to appear in the lawsuit;

(2)     Chameli called him on multiple occasions, each time at his office in Dallas, Texas;

(3)     Chameli repeatedly told him that FCC would immediately demand a defense of FGT from all of FCC's insurance carriers;

(4)     he agreed on behalf of FGT to extend FCC's deadline to file an answer in the lawsuit and Chameli agreed on FCC's behalf to immediately demand a defense of FGT from FCC's insurance carriers in connection with the Villegas suit;

12

(5)     Chameli identified one insurance carrier, but never identified any other insurance company that may cover the allegations in the Villegas suit;

(6)     Chameli sent numerous emails related to the above conversations.

Chameli does not dispute that he communicated with FGT's Texas counsel after it filed the lawsuit against FCC. Chameli does dispute that his contacts showed that he purposefully directed any activities at Texas. We agree. As Chameli's affidavits demonstrate, Chameli's contacts with Texas were done neither to purposefully avail himself of the benefits of conducting business in Texas, nor to purposefully direct any activities at Texas.

The alleged facts in this case do not involve Chameli unilaterally initiating contacts with Texas to enjoy some benefit of conducting business in the state. Rather, it was FGT that instigated the communications from Chameli by filing a lawsuit against his employer in a venue of its choosing. Chameli is not alleged to have sought to conduct some personal business by directing communications to a lawyer in Texas; instead, the undisputed relevant jurisdictional facts are that he acted in a representative capacity and communicated on behalf of his out-of-state employer about a lawsuit filed against it in Texas. Despite the fact that the lawsuit was filed in Texas, FGT's lawyer could have been located anywhere; he happened to have an office in Texas. *See Searcy*, 496 S.W.3d at 65, 74–75 (holding that

location of executives in Texas and corresponding communications with Canadian entity were fortuitous).

In this respect, the fact that Chameli's isolated, litigation-related contacts were directed to Texas was fortuitous. *See Bergenholtz v. Cannata*, 200 S.W.3d 287, 295 (Tex. App.—Dallas 2006, no pet.) (refusing to find purposeful availment when California attorney sued for legal malpractice by Texas client over California case "did not involve any contacts with Texas other than communications about the California lawsuit and payment of fees"); *Myers v. Emery*, 697 S.W.2d 26, 32 (Tex. App.—Dallas 1985, no writ) (deciding, in legal malpractice case in which law firm advertised in legal directory, but client found firm through referral and not directory, that out-of-state defendant-lawyer's long-distance telephone calls and postal service mail directed into Texas to communicate with Texas plaintiff-client "were minimal and fortuitous and were not a result of [the lawyer's] purposefully conducted activities within the State"); *see also Markette v. X–Ray X–Press Corp.*, 240 S.W.3d 464, 468–69 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding that trial court did not have specific personal jurisdiction over Indiana lawyer when lawyer exercised legal judgment and formed legal opinion in Indiana and relevant communications were made from there to Texas); *Proskauer Rose, LLP v. Pelican Trading, Inc.*, No. 14–08–00283–CV, 2009 WL 242993, at *4 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (mem. op.) ("[T]he *Markette* appellee and the appellees

14

in this case make the same argument—that an out-of-state attorney's communication into Texas . . . containing alleged misrepresentations or omissions, constitutes purposeful availment. We rejected this argument in *Markette*, and we do so again today.").

Although FGT maintains that "[o]ne of the primary reasons Chameli initiated contact with FGT was to seek out the benefits and protections [of] Texas Law," FGT ignores that Chameli contacted FGT only after FGT sued Chameli's employer, FCC. Other than the phone and e-mail communications that occurred after FGT sued FCC, FGT did not present any additional contacts that Chameli had with Texas related to the operative facts of the lawsuit. Although FGT argues in its brief that Chameli proposed the Notice Agreement to FGT, the record shows that when Chameli contacted FGT to get an extension, FGT was actually the party who proposed the agreement for an extension only if Chameli agreed to certain conditions.

FGT also relies heavily on *Touradji*, in arguing that the trial court properly denied the special appearance because the defendant communicated with plaintiffs in Texas and made a representation to plaintiffs in Texas. *Touradji* is readily distinguishable because the defendant there had far more contacts with Texas than Chameli. Specifically, we noted in *Touradji* that the defendant formed Playa LP for the sole purpose of becoming a limited partner in a Texas entity, agreed to becoming involved in a Texas entity, conducted business in Texas, and agreed to be subject to

15

the laws of Texas. *Touradji*, 316 S.W.3d at 30. In his individual capacity, the defendant also agreed to serve as a manager of another Texas entity, Playa GP, which served as the general partner of Playa LP and its business included oil and gas interests in Texas. *Id*. We also noted that the defendant communicated with a Texas resident and another Texas entity concerning the ongoing business of Playa LP and Playa GP, consented to Playa LP's sale of Texas oil and gas interests to raise revenue, and met with other managers of Playa GP to remove the manager and CEO of Playa GP. Based on all of these contacts, we held that the defendant's contacts were purposefully directed towards Texas.[5] *Id*. at 31.

The trial court's denial of Chameli's special appearances implies that it found evidence in the record to support specific jurisdiction; namely, that Chameli had purposefully engaged in some act that arose from or related to the allegedly tortious conduct and that was substantially connected to Texas. *See Helicopteros Nacionales*

---

[5] After filing its appellee's brief, FGT filed a letter brief in this Court, arguing that a recent case, *Trois v. Apple Tree Auction Ctr., Inc*., 882 F.3d 485 (5th Cir. 2018), examined issues that are nearly identical as here. First, we note that "[d]ecisions of the federal courts of appeals and district courts do not bind Texas courts although they are received with respectful consideration." *Denton v. Tex. Dep't of Pub. Safety Officers Ass'n*, 862 S.W.2d 785, 791 n.4 (Tex. App.—Austin 1993, writ granted), *affirmed*, 897 S.W.2d 757, 759 (Tex. 1995). Second, *Trois* is factually distinguishable for a number of reasons, including that the out-of-state defendant, who was found to have been subject to personal jurisdiction in Texas, reached out to Texas to "garner business and make specific representations." *Trois*, 882 F.3d at 491. Here, FGT never asserted that Chameli reached into Texas to garner business. Instead, Chameli only contacted FGT after his client was sued.

*de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868 (1984) (nexus required for specific jurisdiction); *BMC Software*, 83 S.W.3d at 795 (appellate court should imply necessary findings). To uphold such findings, however, they must be supported by the record. *BMC Software*, 83 S.W.3d at 795.

The trial court's implied finding that Chameli purposefully engaged in activity, which arose out of e-mails and phone calls and which constituted minimum contacts with the state, is not supported by legally sufficient evidence. Hence, in conducting a de novo review of the trial court's legal conclusions, we determine that the trial court erred in concluding that it had specific jurisdiction over Chameli in his individual capacity.

We sustain Chameli's first issue.

## Conclusion

We reverse and render judgment dismissing FGT's claims against Chameli.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Massengale and Brown.

18