**LONZA AG, Appellant,**

v.

**Stephen BLUM, Appellee.**

**No. 04–01–00483–CV.**

Court of Appeals of Texas,
San Antonio.

Nov. 21, 2001.

Barry F. McNeil, Debra J. McComas, Ronald W. Breaux, Sarah R. Teachout, Haynes and Boone, L.L.P., Dallas, Dennis P. Orr, Thomas M. Mueller, Mayer, Brown & Platt, New Yourk, NY, Charles W. Shipman, Stephen P. Allison, Haynes and Boone, L.L.P., San Antonio, for Appellant.

Leonard W. Yelsky, Yelsky & Lonardo, Cleveland, OH, for Appellee.

Sitting: ALMA L. LÓPEZ, PAUL W. GREEN, and SARAH B. DUNCAN, Justices.

## OPINION

ALMA L. LÓPEZ, Justice.

Lonza AG appeals an interlocutory order denying its special appearance to contest personal jurisdiction. We find insufficient contacts with the State of Texas to assert general jurisdiction over the Swiss corporation, and the extension of long arm jurisdiction under the circumstances presented here would not comport with our traditional notions of fair play and substantial justice. Therefore, the order denying Lonza AG's motion to dismiss for lack of jurisdiction is reversed and Lonza AG is dismissed from the suit.

### BACKGROUND

Blum asserts claims of wrongful termination, fraud, conversion, and intentional infliction of emotional distress arising from an employment relationship in the underlying suit. Blum originally sued his employer, Lonza, Inc., a New York corporation with its principle place of business in New Jersey. He was employed as a salesman with this company from 1983 to 1998 when he was terminated through a voluntary reduction in force. Additional original defendants were a Swiss entity and several Swiss individuals who have either been non-suited or dismissed for lack of personal jurisdiction.

In his sixth amended petition, Blum sued Lonza AG, a Swiss corporation. Lonza AG filed a special appearance and objection to personal jurisdiction. Following an evidentiary hearing,[1] Judge Frank Montalvo denied the special appearance and found that the court had general jurisdiction over the Swiss company.

Lonza AG is a company based in Basel, Switzerland and organized in accordance with the laws of Switzerland. The company manufactures niacin and other products in Switzerland. Lonza AG is a wholly-owned subsidiary of Lonza Group Limited, a Swiss company. Lonza Group also wholly owns a holding company in the United States called Alusuisse–Lonza American, Inc., which in turn wholly owns Lonza, Inc. Thus, Lonza AG and Lonza, Inc. are affiliated. Lonza, Inc., a defendant in the underlying suit, does not contest personal jurisdiction.

Lonza AG denies that it manufactured any of its products in the United States, denies that it does business in Texas, or

---

1. In support of Lonza AG's amended special appearance, it filed the affidavits of Thomas M. Mueller, counsel for Lonza AG in this proceeding and in federal anti-trust proceedings, with supporting documents from the federal suit; of Dr. Hans Peter Pfirter, in-house counsel for Lonza AG, and of John Dobol, VP of Marketing and Sales for Lonza, Inc., and the reporter's record of the guilty plea to one count of violating the Sherman Anti–Trust Act in the criminal conspiracy action in the Northern District of Texas. Appellee Blum testified live at the hearing.

has directly targeted Texas for purposes of marketing its products. All contact with Texas is done through Lonza, Inc. Lonza AG concedes two contacts with Texas: it provided free product samples of niacin to a Texas A & M professor for research purposes and it voluntarily waived personal jurisdiction in a federal anti-trust suit in the Northern District of Texas. By sworn affidavits, Lonza AG denied in detail any other contacts with Texas relevant to this proceeding.

## STANDARD OF REVIEW

■ A nonresident defendant must negate all bases of personal jurisdiction to prevail in a special appearance. *CSR Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex.1996). There is a conflict among the courts of appeal on which standard of review to employ in considering an appeal of a ruling on a special appearance.[2] In *Case v. Grammar*, we stated:

When a defendant challenges a Texas court's exercise of personal jurisdiction through a special appearance, he carries the burden of negating all bases of personal jurisdiction. *See CSR Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex.1996). In spite of the holdings of several of our sister courts of appeals, this court has held that the proper standard of review of a plea to the jurisdiction in an interlocutory appeal is abuse of discretion. *See Magnolia Gas Co. v. Knight Equip. & Mfg.*, 994 S.W.2d 684, 689 (Tex.App.— San Antonio 1998, no pet.). Under the abuse of discretion standard, we may not substitute our judgment for that of the trial court regarding its resolution of factual issues and we cannot disturb its decision absent a showing of arbitrariness or unreasonableness. *See id.* (citing *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992)).

*Case v. Grammar*, 31 S.W.3d 304, 308(Tex.App.—San Antonio 2000, no pet.). In prior cases, as well, this court has stated that trial court decisions derived from both factual determinations and legal conclusions are generally reviewed for an

2. The Fort Worth Court of Appeals recently noted that:

[T]he San Antonio Court of Appeals is the only court that applies an abuse of discretion standard of review for the granting or denial of a special appearance. *Compare Joe Guerra Exxon Station v. Michelin Tyre Public Ltd. Co.*, 32 S.W.3d 383, 386 (Tex. App.—San Antonio 2000, no pet.) (reviewing for an abuse of discretion) *and Case v. Grammar*, 31 S.W.3d 304, 307–08 (Tex. App.—San Antonio 2000, no pet.) (same) *with LeBlanc v. Kyle*, 28 S.W.3d 99, 101 (Tex.App.—Texarkana 2000, no pet.) (applying factual sufficiency review); *Daimler– Benz Aktiengesellschaft v. Olson*, 21 S.W.3d 707, 715 (Tex.App.—Austin 2000, pet. filed) (same); *In re Estate of Judd*, 8 S.W.3d at 440–41 (same); *C Loc Retention Sys., Inc. v. Hendrix*, 993 S.W.2d 473, 476 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (same); *Ball v. Bigham*, 990 S.W.2d 343, 347 (Tex.App.—Amarillo 1999, no pet.) (same); *Cadle v. Graubart*, 990 S.W.2d 469, 471 (Tex.App.—Beaumont 1999, no pet.) (same); *Happy Indus. Corp.*, 983 S.W.2d at 847 (same); *Garner v. Furmanite Australia Party, Ltd.*, 966 S.W.2d 798, 802 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (same); *Al Turki v. Taher*, 958 S.W.2d 258, 260–61 (Tex.App.—Eastland 1997, pet. denied) (same). We do not view the amendment to the Texas Civil Practice and Remedies Code, which adds the granting or denial of a special appearance to the list of interlocutory orders that may be appealed, as intending to change previous case law holding that sufficiency of the evidence was the standard of review of a final judgment granting a special appearance. *See* Act of May 27, 1997, 75th Leg., R.S., ch. 1296, § 1, 1997 TEX. GEN. LAWS 4936, 4937 (codified at TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.2001)); *Fish*, 948 S.W.2d at 892; *Nikolai*, 922 S.W.2d at 236.

*Michel v. Rocket Eng. Corp.*, 45 S.W.3d 658, 680 n. 2 (Tex.App.—Fort Worth 2001, no pet.).

abuse of discretion. *See Magnolia Gas Co. v. Knight Equipment & Mfg. Corp.,* 994 S.W.2d 684, 689 (Tex.App.—San Antonio 1998, no pet.). Under this standard, we may not disturb a trial court's resolution of factual issues unless the trial court could reasonably have reached only one conclusion. *Klenk v. Bustamante,* 993 S.W.2d 677 (Tex.App.—San Antonio 1998, no pet). With regard to legal issues, however, we are much less deferential. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex. 1992). A trial court has no "discretion" in determining what the law is or applying the law to the facts of the case. *Id.* A clear failure by the trial court to analyze or apply the law to the facts correctly will constitute an abuse of discretion. *Id.; see Transportes Aereos de Coahuila, S.A. v. Falcon,* 5 S.W.3d 712, 717 (Tex.App.—San Antonio 1999, pet. denied). In each of our cases cited above, however, the trial court failed to file requested findings of fact and conclusions of law, and we relied on the reporters' record for such evidence as would support the trial court's ruling.

█ Where, as in the case before us, the trial court does enter findings of fact and conclusions of law, the findings of fact are reviewed under the sufficiency of the evidence standard, and the trial court's conclusions of law are reviewed de novo. *See Linton v. Airbus Industrie,* 934 S.W.2d 754, 757 (Tex.App.—Houston [14th Dist.] 1996, writ denied); *see also* W. Wendell Hall, *Standards of Review in Texas,* 29 ST. MARY'S L.J. 351, 375–76 (1998). In reviewing factual sufficiency of the evidence, we examine all the evidence and set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

### PERSONAL JURISDICTION

█ A court may assert personal jurisdiction over a nonresident defendant only if the requirements of both the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Texas long-arm statute are satisfied. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). The Texas Supreme Court has repeatedly interpreted the Texas long-arm statute to reach as far as the federal constitutional requirements of due process will allow. *See, e.g., CSR Ltd.,* 925 S.W.2d at 594. Consequently, the requirements of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process limitations. *Id.*

The federal constitutional test of due process consists of two parts: (1) whether the nonresident defendant has purposely established "minimum contacts" with the forum state; and (2) if so, whether the exercise of jurisdiction comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The minimum contacts requirement is satisfied if either general or specific jurisdiction exists. *CSR Ltd.,* 925 S.W.2d at 595. In this case, the plaintiffs concede that specific jurisdiction is not applicable. Therefore, we only consider whether general jurisdiction exists.

General jurisdiction is present when a defendant's contacts are continuous and systematic, permitting the forum to exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *CSR Ltd.,* 925 S.W.2d at 595. General jurisdiction requires a showing that the defendant conducted substantial activities within the forum, a more de-

manding minimum contacts analysis than for specific jurisdiction. *CSR Ltd.*, 925 S.W.2d at 595.

Appellees assertion of jurisdiction is apparently based upon *World–Wide Volkswagen's* finding that "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivered its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, the United States Supreme Court, in a plurality opinion, moderated that position, stating:

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Asahi Metal Indus. v. Superior Ct. of Cal.*, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). *Asahi* was a specific jurisdiction case. The Fifth Circuit noted later that same year,

In specific jurisdiction cases, the defendant may have, at a minimum, one contact with the forum state—the product or conduct that caused injury there. A conclusion that there is a stream of commerce ensures that the contact that caused harm in the forum occurred there through the defendant's conduct and not the plaintiff's unilateral activities; it does not ensure that defendant's relationship with the forum is continuous and systematic, such that it can be sued there for unrelated claims.

*Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375 (5th Cir.1987). Appellee's reliance on the supreme court's decision in *Kawasaki* is misplaced, as it was a specific jurisdiction case and not relevant to the issue at hand. *See Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199 (Tex.1985).

■ The Texas Supreme Court, in *CMMC v. Salinas*, applied the reasoning from *Asahi* to a lawsuit between a Texas winery and a French manufacturer. 929 S.W.2d 435 (Tex.1996). In *CMMC*, the winery ordered a winepress from CMMC, the French manufacturer, through an independent distributor. As the court noted, the winery contacted the independent distributor, and not vice versa. CMMC had no place of business in Texas and never had any direct contact with the winery. CMMC had previously sold equipment into the United States, including a direct sale to a different winery in Texas. CMMC arranged for the wine press to be transported from France to Houston, FOB Houston. Thus, CMMC shipped the winepress into Texas, and was aware that the destination of the press was Texas. After reviewing *Asahi*, the court concluded, that "CMMC's mere knowledge that its winepress was to be sold and used in Texas and its wiring the machine for use in the United States were not sufficient to subject

CMMC to the jurisdiction of Texas courts." *Id.* at 439. The court reasoned:

> [t]his evidence simply does not show that CMMC designed products for use in Texas, or that it made any effort to market them here, or that it took any other action to purposefully avail itself of this market. Even Justice Brennan's view of the stream-of-commerce doctrine would not allow jurisdiction absent a "regular and anticipated flow of products from manufacture to distribution to retail sale." There is no flow of products from CMMC to Texas; there is scarcely a dribble.

*CMMC,* 929 S.W.2d at 440. Thus, appellee cannot rely on the stream of commerce doctrine to establish general jurisdiction in Texas.

### No Minimum Contacts

Lonza AG asserts that it does not maintain sufficient contacts with Texas to invoke its general jurisdiction. Lonza AG established that it does not sell or market any products in Texas. Rather its products are sold to Lonza, Inc., who then sells them in Texas.

### A. Voluntary Waiver in Federal Price-fixing Prosecution.

In March 2000, Lonza AG and other international manufacturers of niacin were the subject of criminal and civil anti-trust multi-district litigation. Lonza AG entered a guilty plea to one count of conspiracy in a federal district court in the Northern District of Texas. In doing so, Lonza AG expressly waived its right to contest jurisdiction to prosecute *that* case by the federal government. The judge recognized in open court that it would not have jurisdiction over Lonza AG without its voluntary appearance for purposes of entering this plea.

Blum asserts that Texas residents were impacted by the criminal conduct to which Lonza AG pled guilty if they merely purchased a hotdog. This statement presumes that niacinamide, an animal food additive sold by Lonza, Inc. and others, is widely used in growing the sources of animal products ultimately used to manufacture hotdogs in Texas. The conspiracy to fix prices on such food additives was established by a plea in open court. The proffer of evidence indicated that the food additive was actually sold in the United States, including in Texas, through an indirect affiliate, Lonza, Inc. Judge Jerry Buckmeyer concluded the plea proceeding by stating:

> I do specifically find that the circumstances of the case make it appropriate for me to dispense with the preparation of a presentence report and to proceed with sentencing in this case. And in that regard I also note that the defendant would not have been subject to jurisdiction of the United States without voluntarily appearing as they did in this case.[3]

■ The trial court in this case found that Lonza AG's participation in an international price-fixing conspiracy, resulting in the product affected by the conspiracy ultimately being sold in the United States, including Texas, conferred general jurisdiction on Lonza AG in Texas. However, that conduct was actually performed by another entity, Lonza, Inc., in Texas. Moreover, the evidence concerned global marketing activities, not specific activities directed at Texas. The evidence presented in the federal conspiracy case did not

---

**3.** Transcript of Plea of Guilty and Sentencing in *United States of America v. Lonza, AG,* No. 3:99–CR–338–R (N.D.Tex. Dec. 3, 1999).

demonstrate that Lonza AG had sold any niacin in Texas.[4] The guilty plea and its factual summary of conspiracy do not support a finding that Lonza AG had continuous and systematic contacts with Texas. *See National Indus. Sand Ass'n v. Gibson,* 897 S.W.2d 769, 773–74 (Tex.1995) (rejecting conspiracy theory of jurisdiction as sole basis for invoking general jurisdiction in unrelated case); *Michel v. Rocket Eng. Corp.,* 45 S.W.3d 658, 671 (Tex.App.—Fort Worth 2001, no pet.) (same). Blum attempts to distinguish this case by pointing out that the conspiracy in *National Industries Sand* was only an allegation, and Lonza AG was convicted of conspiracy. However, regardless of that distinction, the court looked for evidence of continuing and systematic conduct of the defendant itself to determine whether it could assert personal jurisdiction over the foreign association. *See National Indus. Sand Ass'n,* 897 S.W.2d at 773. Conduct of a co-conspirator in Texas was insufficient to extend long-arm jurisdiction to the foreign defendant. *Id.*

## B. Product Shipped to Texas

■ Lonza AG expressly denied in the Pfirter affidavit that it has ever sold any of its products to any customers in Texas. At most, the evidence presented at the special appearance hearing showed that Lonza AG donated a quantity of niacin for a research project conducted at Texas A & M. This is not evidence of direct sales or a direct marketing in Texas. Blum attempted to recast this donation into a marketing event by testifying that the research results were ultimately used to boost the local sales of Hoffman–Roache, a Lonza,

Inc. customer in Fort Worth. Again, it is an indirect link to Texas commerce. This is an incidental contact, not a systematic and continuous contact sufficient to support the exercise of general jurisdiction over Lonza AG. *See Valsangiacomo v. American Juice Import, Inc.,* 35 S.W.3d 201, 207–08 (Tex.App.—Corpus Christi 2000, no pet.)(shipping samples of juice into Texas insufficient); *Michel,* 45 S.W.3d at 680(19 sales in 7 years insufficient to establish continuous and systematic activity).

■ Blum also argues that the evidence supports its position that Lonza AG purposefully shipped its merchandise to customers in Texas, and that "one customer alone was shipped direct 450,000 to 600,000 kilos per year for 16 years." However, he overlooks the evidence that showed that these direct shipments were done in order to avoid warehousing costs in transit at the request of Blum, as an employee of Lonza, Inc., who placed the order and invoiced the sale. Blum's evidence of systematic and purposeful conduct is only evidence that Lonza, Inc., a New York corporation, did business in Texas.

## C. Lonza, Inc. Staff Participated in Swiss Global Marketing Sessions.

Blum is a former employee of Lonza, Inc. He also claims to be formerly employed by Lonza AG, which is expressly denied by AG. Lonza, Inc. purchases niacin, a vitamin supplement for animal food production, from Lonza AG in Switzerland and sells it all over the US, including Texas. Lonza, Inc. paid Blum's salary,

---

4. The assistant U.S. attorney read into the record a portion of the plea agreement: "During the relevant period, Lonza AG through Lonza, Incorporated, was engaged in the sale of vitamins, including niacin and niacinamide, in the United States and else-

where.... Substantial quantities of niacin and niacinamide affected by this conspiracy were sold by Lonza AG through its indirect subsidiary, Lonza, Incorporated and other conspirators to customers in the Northern District of Texas."

and supervised his work. Blum and other sales reps made periodic trips to Switzerland with U.S. customers to participate in marketing seminars and strategy sessions.

■ The marketing strategy meetings Blum attended with Lonza, Inc. and affiliated entities' sales personnel in Switzerland does not demonstrate substantial activities within Texas. First of all, the meetings were conducted in Switzerland and focused on global activities, including marketing to the United States. Even if these meetings had been held in Texas, the event would not provide the needed contacts to establish general jurisdiction absent evidence that the meetings purposefully targeted Texas consumers. *See Michel,* 45 S.W.3d at 672–73 (holding attending and marketing products at national trade show in Texas insufficient to confer general jurisdiction). At that time, Blum sold products nationally, and, in fact was based for most of his employment period outside the State of Texas. At all times that he was selling niacin to U.S. customers, he was employed by Lonza, Inc. Thus, his conduct was on behalf of Lonza, Inc. This evidence shows consultation with senior management of the product's manufacturer, an affiliated company. It does not show that Blum went home with specific instructions on marketing in Texas—with one exception: Blum stated he was instructed to tell his U.S. customers that Lonza, Inc. and Lonza AG were the same company. The strategy meetings in Switzerland and Blum's testimony that he was encouraged to promote the affiliated relationship of his employer with the manufacturer are significantly weak examples of purposeful activity directed specifically at the State of Texas. In comparison, this is insufficient to support the trial court's finding that Lonza AG purposely targeted Texas with its marketing efforts.

### D. Blum Claims Lonza AG Employed Him.

■ Blum testified that he was employed by two entities: Lonza, Inc. and Lonza AG. No independent evidence supported this assertion, and management in both entities expressly denied that Blum was ever employed by Lonza AG. Lonza, Inc. paid Blum's salary and supervised his work. Under cross-examination, Blum testified that he acted on behalf of Lonza AG when he was selling niacin in Mexico and Canada, but that his sales activity in Texas was on behalf of Lonza, Inc. What he says he did in Mexico and Canada is not relevant to the issue of personal jurisdiction in Texas. The trial court's finding to the contrary is not supported by the evidence.

### FAIR PLAY AND SUBSTANTIAL JUSTICE

■ The trial court failed to find any facts necessary to support its legal conclusion that extending jurisdiction to this Swiss company did not offend traditional notions of fair play and substantial justice. The analysis requires application of the following factors: (1) the burden placed upon the defendant; (2) the forum state's interest in adjudicating the suit; (3) the interest of the plaintiff in obtaining convenient and effective relief; (4) the plaintiff's interest in obtaining efficient resolution of controversies within the interstate judicial system, and (5) the interest in advancing the State's fundamental substantive social policies. *See Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 228 (Tex.1991); *Asahi Metal Indus. Co., Ltd. v. Superior Court,* 480 U.S. 102, 113–114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Indeed, the Supreme Court has cautioned: "Minimum contacts are particularly important when the defendant is from a different country because of

the unique and onerous burden placed on a party called upon to defend in a suit in a foreign legal system." *CSR, Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

Lonza AG has no employees or corporate representatives in Texas. Their representatives would be required to travel from Switzerland to attend court proceedings. Claims asserted against it are based on conduct which occurred entirely in Switzerland, and all its relevant witnesses and evidence are located there. Moreover, this evidence is likely outside the subpoena power of the trial court, which could greatly compromise Lonza AG's ability to defend itself. These factors outweigh any interest Texas has in providing a forum for a Texas citizen whose alleged injury occurred in Switzerland.

Blum has asserted the same claims against Lonza AG and Lonza, Inc. The latter entity is amenable to the power of a Texas court. Blum indicated in his testimony that Lonza, Inc. did not retain large profits and that its parent company drew substantial revenues from the U.S. subsidiary. That testimony, however, does not show Blum's former employer to be judgment proof or to be a mere shell corporation. There is no evidence sufficient to pierce the corporate veil.

### Conclusion

We find that the trial court's findings of fact and conclusions of law are at odds with the great weight and preponderance of the evidence. The evidence does not establish sufficient minimum contacts with Texas, nor would the exercise of our long arm jurisdiction comport with the traditional notions of fair play and substantial justice in this case. We reverse the trial court's order, sustain Lonza AG's objection to the court's assertion of personal jurisdiction and dismiss Lonza AG from further prosecution in appellee's suit.