# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00656-CV

**Elizabeth Murphy Bunting, Appellant**

**v.**

**Kyle Bunting Holdings, Inc., Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. D-1-GN-17-003646, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, Elizabeth Bunting, a nonresident defendant in the underlying case, challenges the trial court's denial of her special appearance in an action brought by the plaintiff Kyle Bunting Holdings, Inc. (KBH) for tortious interference with existing contracts, defamation, and business disparagement. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(7) (providing for interlocutory appeal from denial of special appearance); Tex. R. Civ. P. 120a (providing for special appearance). For the reasons described below, we affirm.

## I. BACKGROUND

KBH, a Delaware company with its principal office in Austin, Texas, "markets decorative hide rugs and related products." Kyle Bunting formed KBH in 2000 and testified that he is "the sole founder, sole shareholder, and sole principal." Two years later, Kyle married Elizabeth and they lived in Texas until 2014, when Elizabeth moved to California. Elizabeth filed for divorce

in California on January 6, 2015, and KBH alleges Elizabeth waited "exactly six months after the move" to file for divorce in "an apparent effort to take advantage of California marital property law."

On July 28, 2017, KBH sued Elizabeth for tortious interference with existing contracts, defamation, and business disparagement and alleged that Elizabeth was falsely claiming to be the "Co Founder/Owner" of KBH and that her "move [to California], and the litany of harassing, threatening, interfering, and defamatory communications that followed, were part of a pattern to intentionally harm Kyle and [KBH] out of spite and/or to obtain an ownership interest in [KBH] that could not be obtained in Texas." Elizabeth filed a special appearance with a supporting affidavit and claimed that personal jurisdiction is improper because she is a resident of California, not Texas, and has not resided in Texas since 2014; she does not hold any interest in real property in Texas and does not pay taxes to the State of Texas; she does not have minimum contacts with the State of Texas; and even if the trial court asserted jurisdiction over her, it would offend traditional notions of fair play and substantial justice. *See* Tex. R. Civ. P. 120a. In an amended petition, KBH pleaded that jurisdiction exists because Elizabeth "was a Texas resident for ten years until at least 2014, she has (substantially more than) minimum contacts with the State of Texas, and the exercise of jurisdiction would not offend the traditional notions of fair play and substantial justice," and listed specific examples of the minimum contacts that will be discussed below.

After a hearing, the trial court denied the special appearance. Elizabeth then requested findings of fact and conclusions of law, but the record does not indicate that any were issued. Elizabeth now appeals the trial court's denial of the special appearance. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(7).

2

## II. APPLICABLE LAW

"The Texas long-arm statute governs Texas courts' exercise of jurisdiction over nonresident defendants" when they do business in Texas. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (citing Tex. Civ. Prac. & Rem. Code §§ 17.041–.045). The long-arm statute lists activities that constitute "doing business" in Texas—including committing a tort in whole or in part—but the list is not exclusive and "section 17.042's language extends Texas courts' personal jurisdiction 'as far as the federal constitutional requirements of due process will permit.'" *Id.* (quoting *U-Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977)). "A state's exercise of jurisdiction comports with federal due process if the nonresident defendant has 'minimum contacts' with the state and that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 885 (Tex. 2017) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)). Minimum contacts with a state exist when the defendant "purposefully avails [her]self of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws" and justifying the conclusion "that the defendant could reasonably anticipate being called into a Texas court." *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 559 (Tex. 2018) (quoting *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009)). The purposeful availment requirement encompasses three considerations: (1) "only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person"; (2) "the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated"; and (3) "the defendant must seek some benefit, advantage

3

or profit by availing itself of the jurisdiction." *Id.* (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 151 (Tex. 2013)).

A defendant's contacts may give rise to either general or specific jurisdiction. *Id.* (citing *Moncrief Oil*, 414 S.W.3d at 150). General jurisdiction exists when the contacts are "continuous and systematic with a state"; specific jurisdiction exists "when the cause of action arises from or is related to a defendant's purposeful activities in the state." *Id.* (citing *Moncrief Oil*, 414 S.W.3d at 150). Specific jurisdiction generally requires a "claim-by-claim" analysis, but when "all claims arise from the same forum contacts," we "need not assess contacts on a claim-by-claim basis." *Moncrief Oil*, 414 S.W.3d at 150–51.

In a challenge to personal jurisdiction, the parties bear shifting burdens of proof. *Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). The plaintiff bears the initial burden "to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute." *Id.* The burden then shifts to the defendant "to negate all bases of personal jurisdiction alleged by the plaintiff," on "either a factual or legal basis." *Id.* at 658–59.

"Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law that we review de novo." *Old Republic*, 549 S.W.3d at 558 (citing *Moncrief Oil*, 414 S.W.3d at 150). When no findings of fact and conclusions of law are issued, we infer all relevant facts supported by the evidence that are necessary to support the judgment. *Id.* (citing *BMC*, 83 S.W.3d at 795). But "when the appellate record includes the reporter's and clerk's records," as here, "these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court." *BMC*, 83 S.W.3d at 795.

4

### III. DISCUSSION

In a single issue with three subparts, Elizabeth argues that the trial court erred in denying her special appearance because (1) she did not purposefully avail herself of the state and therefore specific jurisdiction does not exist; (2) she does not reside in Texas, conduct business in Texas, or own property or bank accounts in Texas and therefore general jurisdiction does not exist; and (3) even if minimum contacts exist, the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. We first consider whether Elizabeth purposefully availed herself of the privilege of conducting activities in Texas.

#### A. Purposeful Availment

KBH alleged in its amended petition that Elizabeth had certain "contacts with individuals located in Texas." Among other alleged contacts, the petition identifies that Elizabeth made "hundreds of harassing phone calls to Kyle and [KBH's] staff" "in her capacity as alleged 'owner,'" including "demanding that staff interrupt and remove Kyle from meetings or other work," instructing KBH's general manager to terminate the employment of "a promising sales consultant who had moved to Austin from San Francisco" to work for KBH, and making "suggestions that

everyone's jobs were in jeopardy if her instructions were not followed."[1] KBH's amended petition states that the sales consultant "ultimately quit in part because of [Elizabeth's] harassment."

Elizabeth does not deny making the phone calls to Kyle and KBH's staff in Texas—she admits in her affidavit that "there have been issues that required me to contact Kyle Bunting by telephone at [KBH] and [I] have asked he be removed from meetings to speak with me" and she did ask that a KBH employee "be terminated" after she learned that "she was involved in an affair with Kyle." However, she alleges that she asked that the employee be terminated from his employment "[not] to harm [KBH] but to end an inappropriate work place relationship that was negatively impacting our attempt to reconcile."[2]

---

[1] KBH also alleges as minimum contacts that Elizabeth sent a LinkedIn invite to an Austin resident in which she claimed to be a KBH "Owner" and "Founder" and responded to KBH marketing posts. Additionally, the petition identifies communications "directed elsewhere [other than Texas]" that "further support personal jurisdiction" because they "relate to a Texas company that [Elizabeth] alleges she owns" and were "expressly aimed at harming, defaming, and interfering with the reputation and contractual relations of a Texas company." These include additional LinkedIn invites; threats associated with an accusation of an affair with Kyle to an employee of a "company with interest in acquiring [KBH]" that allegedly led to the failure of a potential deal; and an Instagram post accusing Kyle of leaving his family for a KBH client, lying, and beating his children, which accusations allegedly led to lost business with that client. Finally, KBH argues that Elizabeth's "claims to ownership [of KBH] evidently arise from her ten years of residence in Texas, during which time she claims to have participated in all aspects of [KBH's] business" and that "[t]his conduct and the claims to ownership alone are sufficient to establish purposeful availment." Because we conclude, however, that Elizabeth's phone calls to KBH employees are independently sufficient to establish personal jurisdiction, we do not reach these other contacts in our analysis.

[2] Elizabeth states in her affidavit that she "did not, however, engage in any harassment towards [KBH] employees." But this denial goes to culpability, not lack of contacts. *See Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 559 (Tex. 2018) ("[W]e must not confuse 'the roles of judge and jury by equating the jurisdictional inquiry with the underlying merits." (quoting *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 70 (Tex. 2016))); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 791 (Tex. 2005) ("Jurisdiction cannot turn on whether a defendant denies wrongdoing—as virtually all will," otherwise "the Texas jurisdictional rule will be: guilty nonresidents can be sued here, innocent ones cannot.").

Because Elizabeth did not factually negate either making "hundreds" of phone calls to KBH and its employees in Texas or calling the general manager to instruct him to terminate the employment of the KBH employee, we consider whether Elizabeth has met her burden to negate this ground for personal jurisdiction on a legal basis. *See Kelly*, 301 S.W.3d at 659 ("The defendant can negate jurisdiction on either a factual or a legal basis."). To negate personal jurisdiction on a legal basis,

> the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts . . . .

*Id*. Elizabeth does not dispute that KBH's claims arise from the telephone conversations.[3] Instead, she argues that her telephone calls do not constitute purposeful availment. We disagree.

Elizabeth makes three arguments for why the telephone calls do not constitute purposeful availment, relying primarily on *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 791 (Tex. 2005). First, Elizabeth argues that the calls to KBH's "employees in Texas were based solely on Kyle Bunting's unilateral decision to locate the company in Texas" and therefore "the fact that [KBH] was based in Texas was completely fortuitous." Second, she asserts

---

[3] Because objections to personal jurisdiction can be waived, we need not raise and consider the "arising from" issue sua sponte. *See In re Fisher*, 433 S.W.3d 523, 532 (Tex. 2014) (orig. proceeding) (noting that "[o]bjections to personal jurisdiction may be waived" (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985))). Likewise, Elizabeth does not dispute that "all claims arise from the same forum contacts," and therefore we also "need not assess contacts on a claim-by-claim basis." *See Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150–51 (Tex. 2013).

7

that "phone communications are unreliable indicators of purposeful availment, even if the content of those communications is tortious." Third, she claims that she "did not seek to avail herself of the benefits and protections of the laws of Texas" in making the communications; she merely desired "reconciliation of her marriage, not any financial benefit in Texas." We find these arguments unpersuasive.

In *Michiana*, the Texas Supreme Court held that for purposes of asserting specific personal jurisdiction, purposeful availment could not be established through a single telephone conversation initiated by a Texas resident to a nonresident defendant even though the content of the conversation gave rise to the plaintiff's intentional tort claims. *Id.* at 789–92. But the Texas Supreme Court later described its *Michiana* holding by explaining that "although the dealer allegedly committed a tort against a resident, its contacts with Texas were only *receiving* the phone call" and that this contact did not constitute purposeful availment "because the dealer 'had no say in the matter.'" *Moncrief Oil*, 414 S.W.3d at 152 (quoting *Michiana*, 168 S.W.3d at 787) (emphasis added). Here, in contrast, Elizabeth did have a say in the matter; she initiated phone calls to Texas to direct KBH's employees at the KBH office in Texas to take certain actions. *See TV Azteca v. Ruiz*, 490 S.W.3d 29, 38 (Tex. 2016) ("To constitute purposeful availment, the defendant's contacts must be 'purposefully directed' to the state." (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991))); *see also Walden*, 571 U.S. at 291 ("[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State.").

Elizabeth's contacts with Texas were not based on Kyle's unilateral decision to locate the company in Texas, but on her intentional conduct in calling employees working at the KBH office in Texas and making statements that give rise to KBH's claims. *See Walden*, 571 U.S. at 285–86 (recognizing that "physical presence in the forum is not a prerequisite to [specific] jurisdiction" but "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum"); *cf. Moncrief Oil*, 414 S.W.3d at 153 (noting that "[u]nlike in *Michiana*, the [defendants] had a 'say in the matter'" and "were not unilaterally haled into forming contacts with Texas"). Elizabeth's phone call contacts were purposeful in being initiated by her—unlike the case law concluding that contacts were dependent on the unilateral decision of a third party—and we have distinguished *Michiana* on similar grounds as here. *See Zhang v. Med-Towel Enters., Ltd.*, No. 03-09-00457-CV, 2010 WL 1404613, at *5 (Tex. App.—Austin Apr. 8, 2010, pet. denied) (mem. op.) (noting that in *Michiana* "the plaintiff/buyer initiated contact," while "[h]ere, by contrast, there is evidence of hundreds of communications, many initiated by [the nonresident defendant]"); *see also TexVa, Inc. v. Boone*, 300 S.W.3d 879, 888 (Tex. App.—Dallas 2009, pet. denied) ("In *Michiana* the court addressed the narrow issue whether an out of state seller could be hailed into a Texas court for an alleged misrepresentation made during a single telephone call initiated by a Texas resident.").[4] Elizabeth does not cite any authority for the proposition that when a nonresident

_____

[4] KBH cites and we have found multiple federal authorities establishing purposeful availment based on even a single telephone call when the tortious conduct occurred in the conversation. *See, e.g.*, *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 491 (5th Cir. 2018) ("We have permitted the exercise of specific personal jurisdiction over an intentional-tort claim where a nonresident defendant places a call to a forum and makes false statements over the phone

defendant *initiated* "hundreds" of telephone calls to people in the forum state in which the alleged content gave rise to the intentional tort claims, the nonresident defendant was not purposefully directing the contacts to the forum state. We conclude that on these facts Elizabeth's contacts with Texas were purposeful, not the result of a unilateral activity by another party or third person in which she had no say.[5]

We recognize that in some cases phone calls may be unreliable indicators of purposeful availment. *See Michiana*, 168 S.W.3d at 791. As the Texas Supreme Court has noted,

---

to a forum resident."); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."). As the Texas Supreme Court has noted, "we rely on precedent from the United States Supreme Court and other federal courts, as well as our own decisions, in determining whether a nonresident defendant has negated all bases of jurisdiction." *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 166 (Tex. 2007) (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002)). And although "[d]ecisions of the federal courts of appeals and district courts do not bind Texas courts," "they are received with respectful consideration." *Denton v. Texas Dep't of Pub. Safety Officers Ass'n*, 862 S.W.2d 785, 791 n.4 (Tex. App.—Austin 1993), *aff'd*, 897 S.W.2d 757, 759 (Tex. 1995).

[5] Elizabeth cites three cases from our sister courts that apply *Michiana* to hold that certain types of communications at issue do not establish minimum contacts even when the content of the communications gave rise to the claims; but in each of those cases, the analysis turned on the fact that the defendant had not initiated the communications or the communications did not reach Texas due to the defendant's actions. *See Riverside Exports, Inc. v. B.R. Crane & Equip., LLC*, 362 S.W.3d 649, 655–56 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) ("Where, as here, a Texas resident *initiates* the purchase of equipment outside Texas by contacting a company outside Texas that does not direct marketing to Texas, it matters little whether the nonresident company answers the inquiry by telephone or by email." (emphasis added)); *Peredo v. M. Holland Co.*, 310 S.W.3d 468, 473 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("Significantly, none of Peredo's email exchanges with Palazuelos were *initiated* by Peredo. To the contrary, each of Peredo's emails to Palazuelos is a reply to an email he received from Palazuelos." (emphasis added)); *Proskauer Rose LLP v. Pelican Trading, Inc.*, No. 14-08-00283-CV, 2009 WL 242993, at *4–5 (Tex. App.—Houston [14th Dist.] Feb. 3, 2009, no pet.) (mem. op.) (noting *Michiana* rejected "directed tort" theory and prevents jurisdiction based on "legal advice" that "found its way to Texas not because of any contact [defendant] *initiated*" (emphasis added)). Here, in contrast, Elizabeth initiated the communications to Texas by calling employees at the KBH office in Texas.

"changes in technology have made reliance on phone calls obsolete as proof of purposeful availment" because the phone number "no longer necessarily indicates anything about the caller's location" given that the other party may have "forwarded calls or traveled with a mobile phone." *Id.* For this reason, we have previously concluded that "additional evidence regarding the initiator of the call, the location of the recipient, and the knowledge of the caller regarding the recipient's location are relevant in establishing jurisdiction." *Zhang*, 2010 WL 1404613, at *5 n.1. Here, however, it is undisputed that the recipients of the phone calls were in Texas when the calls were made and Elizabeth had knowledge of their location, e.g., Elizabeth would call the employees at the KBH office in Texas to get Kyle out of a meeting.

Finally, Elizabeth argues that she did not seek any benefit, advantage, or profit from her contacts with Texas, but rather she only desired "reconciliation of her marriage, not any financial benefit in Texas." The requirement that a nonresident defendant must seek some "benefit, advantage, or profit" by availing itself of the forum is "premised on implied consent: a nonresident consents to suit by invoking the benefits and protections of a forum's laws." *Moncrief Oil*, 414 S.W.3d at 154 (citing *Michiana*, 168 S.W.3d at 784–85). In this manner, the nonresident defendant's activities would support "justify[ing] a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Retamco Operating*, 278 S.W.3d at 338 (quoting *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002)).

Elizabeth fails to cite any authority for why the benefit must be strictly a "financial benefit," and we see no reason why seeking a non-financial benefit may not "invok[e] the benefits and protections of a forum's laws." *See Moncrief Oil*, 414 S.W.3d at 154 (citing *Michiana*,

11

168 S.W.3d at 784–85).  From this record, we imply a finding that Elizabeth did "seek some benefit, advantage or profit by availing [her]self of the jurisdiction."  *See Old Republic*, 549 S.W.3d at 559 (quoting *Moncrief Oil*, 414 S.W.3d at 151); *id.* at 558 (noting that we infer all relevant facts supported by evidence that are necessary to support judgment when no findings of fact and conclusions or law are issued).  Elizabeth sought the benefit of getting the employment terminated of a KBH employee whom she alleged was having an affair with Kyle, which she does not dispute.  KBH pleaded that Elizabeth made the "demand[] in her capacity as alleged 'owner' of [KBH]," instructing the general manager that the KBH employee "is to be terminated by the end of business day 7/24/15" and stating "I was not made aware of us hiring her and her current role . . . Thank you for your cooperation and understanding regarding [the KBH employee's] immediate termination . . . this is going to happen[,] so do what you need to do in order to prepare yourself for filling [the KBH employee's] rules[sic]/duties at work."  Elizabeth did not negate on a factual basis this assertion and effectively admits in her affidavit that she sought the non-financial benefit of getting the employment of a KBH employee at the Texas office terminated because she thought the employee was having an affair with her husband.  We conclude that when Elizabeth, under the semblance of being an alleged "owner," directed a general manager in Texas to fire an employee who works at KBH's office in Texas, Elizabeth sought a benefit through contact with Texas that justifies a conclusion that she could reasonably anticipate being called into a Texas court.[6]

---

[6]  In *Old Republic*, the Texas Supreme Court recently concluded that the fact that a non-resident defendant "participated in hundreds of phone calls with a Texas resident" did not establish specific jurisdiction.  549 S.W.3d at 560–61.  However, the phone calls at issue in *Old Republic* are different from the ones at issue here for at least two reasons.  First, "Old Republic did not plead or attempt to prove—that Goldsmith initiated the calls with Bell," *id.* at 561, while here

In sum, Elizabeth failed to meet her burden to negate personal jurisdiction on either a legal or factual basis. *See Kelly*, 301 S.W.3d at 658 (noting that burden is on nonresident defendant to negate bases of personal jurisdiction after sufficiently pleaded facts). She purposefully availed herself of the Texas forum when she initiated "hundreds" of phone calls—whose contents she does not dispute give rise to KBH's claims—while knowing that the receivers of the phone calls were physically located at the KBH office in Texas when she purposefully made the calls and seeking a benefit of, among other things, getting the employment of a KBH employee terminated under the semblance of her authority as an alleged owner of KBH. *See Moncrief Oil*, 414 S.W.3d at 151 (listing requirements for purposeful availment). Because we conclude that minimum contacts exist to support the trial court's exercise of specific jurisdiction, we need not consider whether general jurisdiction exists.

## B. Fair Play and Substantial Justice

Nevertheless, "[e]ven when a nonresident has established minimum contacts with a state, due process permits the state to assert jurisdiction over the nonresident only if doing so comports with 'traditional notions of fair play and substantial justice.'" *TV Azteca*, 490 S.W.3d at 55 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Only in rare cases,

it is undisputed that Elizabeth initiated the calls to the KBH employees, e.g., to get Kyle removed from meetings. Second, the Texas Supreme Court described the *Old Republic* phone calls as "phone calls with a friend who happens to live in Texas" and therefore there was no evidence that the contacts "sought a benefit, advantage, or profit from these calls." *Id.* Here, in contrast, Elizabeth made the phone calls under the alleged authority as a KBH owner to KBH employees directing them to perform duties, including terminating the employment of an employee—a markedly different type of contact from mere "phone calls with a friend."

13

however, will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Retamco Operating*, 278 S.W.3d at 341 (quoting *Guardian Royal*, 815 S.W.2d at 231). This is not one of those rare cases.

To meet its burden, the defendant must present "a compelling case that the presence of some consideration would render jurisdiction unreasonable." *TV Azteca*, 490 S.W.3d at 55 (quoting *Spir Star AG v. Kimich*, 310 S.W.3d 868, 878–79 (Tex. 2010)). When the defendant is a citizen of another state, we consider five factors in this analysis:

> (1) "the burden on the defendant"; (2) "the interests of the forum state in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; (4) the interstate or international judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several nations or states in furthering fundamental substantive social policies.

*Spir Star AG*, 310 S.W.3d at 878 (quoting *Guardian Royal*, 815 S.W.2d at 231); *see also TV Azteca*, 490 S.W.3d at 55 (noting additional factors to consider when nonresident is "a citizen of a foreign country, and not just another state").

Here, Elizabeth fails to make a "compelling case" that jurisdiction is "unreasonable." She first argues that the burden would be great in traveling to Texas from California to defend against KBH's claims. But although "suit in Texas certainly imposes a burden," "the same can be said of all nonresidents" and "[d]istance alone cannot ordinarily defeat jurisdiction." *Moncrief Oil*, 414 S.W.3d at 155. In short, Elizabeth has failed to show that the burden associated with travel is

unreasonable.[7] The only other argument Elizabeth presents supporting her case is that "the interests of California are substantially more significant" because "[t]he divorce dispute that is driving this litigation is located there and the decision regarding the ownership interest(s) of [Elizabeth and Kyle] will be determined by a California court."[8] It is unclear what factor Elizabeth believes this argument supports; presumably, she is arguing that it goes to the interstate judicial system's interest in obtaining the most efficient resolution. But even assuming, without deciding, that this is true, the other factors weigh in favor of exercising jurisdiction. KBH chose to file suit in Texas and given that its principal office is in Texas, it has an interest in obtaining convenient relief in Texas. Moreover, KBH alleges injuries inflicted by an out-of-state actor that occurred over the phone to recipients at KBH's office in Texas. Texas has "a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985); *see Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984) ("And it is beyond dispute that [a state] has a significant interest in redressing injuries that actually occur within the State."); *TV Azteca*, 490 S.W.3d at 55–56 (recognizing state's interest in

---

[7] Elizabeth cites *Lonza AG v. Blum* for support. 70 S.W.3d 184, 193–94 (Tex. App.—San Antonio 2001, pet. denied). But, in contrast to here, *Lonza* concerned a defendant whose representatives would have to travel from Switzerland, the relevant witnesses and evidence were all located in Switzerland, the conduct at issue occurred entirely in Switzerland, and the court relied on the legal proposition that "[m]inimum contacts are particularly important when the defendant is from a different *country*." *Id.* (quoting *CSR, Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996)) (emphasis added).

[8] Elizabeth also asserts, without making any arguments, that there is "no reason to believe" that relief in Texas would be more "convenient and effective" and that Texas's policies "are not furthered" by exercising jurisdiction. But these assertions fail to support her burden—i.e., Elizabeth needs to show more than that the factors do not support exercising jurisdiction over her in Texas, she must make a compelling case that the exercise of jurisdiction in Texas is unreasonable. *See TV Azteca v. Ruiz*, 490 S.W.3d 29, 38 (Tex. 2016).

exercising jurisdiction over out-of-state tortfeasors committing torts in state against residents); *Moncrief Oil*, 414 S.W.3d at 155 ("[T]he allegations that [the defendants] committed a tort in Texas against a resident implicate a serious state interest in adjudicating the dispute."). Weighing all the relevant factors, we hold that Elizabeth failed to meet her burden to present a "compelling case" that exercising personal jurisdiction would be unreasonable and therefore offend traditional notions of fair play and substantial justice.

## IV. CONCLUSION

For all these reasons, we conclude that the trial court properly concluded that it has specific jurisdiction over Elizabeth in the underlying lawsuit and that exercising jurisdiction would not offend traditional notions of fair play and substantial justice. Accordingly, we overrule Elizabeth's sole issue on appeal and affirm the trial court's order denying her special appearance.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Smith

Affirmed

Filed: June 27, 2019

16